**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Frank E. Dow

      v.                                    Civil No. 07-cv-355-JL

William L. Wrenn, Commissioner,
New Hampshire Department of
Corrections

**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is Frank Dow's petition for a writ of
habeas corpus (document no. 1), filed pursuant to 28 U.S.C. §
2254.  The matter is before me for preliminary review to
determine whether or not the claims raised in the petition are
facially valid and may proceed.  <u>See</u> Rule 4 of the Rules
Governing Section 2254 cases in the United States District Courts
("§ 2254 Rules"); United States District Court District of New
Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing magistrate
judge to preliminarily review pro se prisoner filings pursuant to
28 U.S.C. § 1915A).

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated
plaintiff commences an action pro se and in forma pauperis, the

magistrate judge is directed to conduct a preliminary review.  LR
4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally, however inartfully pleaded.
See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200
(2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520–21 (1972) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  See
Castro v. United States, 540 U.S. 375, 381 (2003) (noting that
courts may construe pro se pleadings so as to avoid
inappropriately stringent rules and unnecessary dismissals of
claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).
All of the factual assertions made by a pro se plaintiff and
inferences reasonably drawn therefrom must be accepted as true.
See id.  This review ensures that pro se pleadings are given fair
and meaningful consideration.

Background

     On March 23, 1984, Frank Dow was sentenced to a term of
eighteen years to life in prison on homicide charges.  While

2

serving the minimum term of his sentence, Dow was convicted of attempted escape and sentenced to an additional prison term of 1 ½ – 3 years in prison, to be served consecutively to his eighteen year minimum sentence.  On June 21, 2001, Dow was paroled from his homicide sentence to his consecutive sentence.

On January 2, 2003, Dow appeared in front of the Adult Parole Board ("APB").  The APB determined that, due to the length of his incarceration, Dow need a gradual transition into the community before he could be paroled.  The APB denied Dow's request for parole until his institutional custody level was reduced.  Although Dow alleges that the prison refused to lower his custody level, the APB reheard Dow's parole request on April 3, 2003, and approved parole for Dow.

Dow's parole plan was sent to the Department of Corrections ("DOC") Probation and Parole Department.  The Officer who received the plan refused to approve it.  The APB scheduled a review hearing on May 27, 2003.  On that date, the APB rescinded it's former parole approval and determined that Dow would need a gradual integration into the community through a halfway house. The APB agreed to rehear the matter when Dow was in a halfway house.  Because the DOC does not ordinarily allow individuals

3

convicted of escape into halfway houses, the APB sent a letter to
the DOC Commissioner in July of 2003, seeking an exception to the
general rule so that Dow could be admitted to a halfway house.
The Commissioner denied the APB's request on August 8, 2003,
citing a number of concerns, including: (1) that public sentiment
would be negatively impacted if there were a problem with Dow at
the halfway house, and (2) that, although Dow had served the
minimum sentence imposed by the state court, he had not served
the twenty-five year minimum sentence that the Department of
Corrections had recommended to the trial court prior to Dow's
sentencing.  On September 25, 2003, the APB held another hearing
and suggested that petitioner work with a counselor to deal with
issues of institutionalization and to learn basic life skills,
since he would not be transitioning to the community through a
halfway house.

    At Dow's next parole hearing, held January 22, 2004, the APB
again denied parole as he had not achieved a reduction in custody
status within the prison.  Dow alleges that prison officials
continued to refuse to reduce his custody level.

    On April 4, 2004, Dow filed a petition for a writ of habeas
corpus in the state Superior Court, arguing that his parole had

been illegally rescinded on May 27, 2003, as he had not violated his parole.  On May 27, 2004, Dow's parole to a halfway house was authorized by the DOC.  As a result, Dow agreed to withdraw his petition.

On October 4, 2004, Dow was moved to the Concord Halfway House ("CHH").  Dow reports that while at the CHH, he found employment quickly, attended nightly Alcoholics Anonymous meetings, and had no problems in the house or in the community.

Dow claims that he was treated differently than other parolees residing at halfway houses because an uncle of his crime victim, Tony Dodge, was a Probation and Parole Officer ("PPO") who was transferred to the Concord office at around the same time Dow's parole was approved.  Dow states that prior to becoming a PPO, Dodge was a corrections officer at the prison.  On several occasions, Dodge interfered with Dow's visits from his wife, resulting in a confrontation and ultimately the prison segregating Dow from Dodge at all times.  While Dodge did not speak to Dow directly at the parole office, Dow claims that Dodge was always present when Dow reported, and did things like stand in Dow's way, so that Dow had to walk around him every time he went to report to his parole officer.  Dow claimed that Dodge's

relationship to Dow's victim negatively impacted the treatment he received from Dodge, Dow's own PPO, Ron Hebert, and other PPOs in the Concord parole office.

Dow alleges that while living in the supervised setting of the CHH, he was required to pay halfway house supervision fees. Dow claims the ordinary practice of the Department of Corrections is not to require halfway house residents to also report to a parole officer and to pay parole supervision fees. Dow claims, however, that he was required to both report to a parole officer and to pay parole supervision fees in addition to his halfway house supervision and fees. Dow complied with these additional conditions.

On January 24, 2005, Dow was returned to the prison after being falsely accused of selling heroin to another halfway house resident named Julie. On March 17, 2005, at Dow's parole revocation hearing, Hebert asked for Dow's parole to be revoked and that Dow not be considered for reparole for five years. The APB, however, found Julie's accusations not to be credible and returned Dow to parole status. Julie later told Dow that Hebert had pressured her to falsely accuse Dow of selling her heroin.

On March 21, 2005, Dow was returned to parole and sent to a halfway house in Manchester.  The APB had previously been reluctant to send Dow to Manchester because Dow's crime occurred there.  Dow's Manchester PPO did not require Dow to report for parole supervision or pay parole supervision fees while Dow was at the halfway house.  Dow was more restricted in his freedoms at the Manchester halfway house than he had been in Concord, to avoid negative interactions in the community where his crime had been committed.  Because he was not allowed to work in Manchester, Dow arranged a job in another town.  Dow's PPO approved the plan and approved Dow to move out of the halfway house to his family's home near his job.

On April 22, 2005, the day Dow was to move home, he was waiting for his sister to pick him up when he was told that, instead of going home, he was being returned to the CHH.  Dow was not told why his return home had been cancelled.  The CHH unit manager repeatedly refused to discuss the issue with Dow.

On May 4, 2005, while walking to an Alcoholics Anonymous meeting with another CHH resident, Dow was stopped by PPO Hebert who was driving by.  Hebert wanted to know why Dow was in Concord, and why he had not yet reported to Hebert.  Hebert

7

stated that Dow was not allowed to be in the company of another parolee outside of the house, AA meetings, or work, that he would revoke Dow's parole if it happened again, and that he would "make sure that [Dow] was 'found guilty next time.'"  Dow reported to Hebert the next day, and once again had to walk around Dodge who had positioned himself in Dow's way.  When he reported, Dow was told by Hebert that he had been lucky not to have had his parole revoked at his March 2005 hearing.  Dow returned to the halfway house and tried unsuccessfully to discuss with the CHH unit manager his problems with Hebert and Dodge.  Dow then left the halfway house to do his laundry and did not return.  The next day, a warrant for Dow's arrest issued.  Dow was arrested a month later at his home address where he had intended to move on April 22, 2005.

Dow was appointed counsel for his parole revocation hearing, which was scheduled on July 19, 2005.  He met his attorney the day before the hearing.  Dow's attorney advised him that he could expect a revocation and reconsideration for parole in six months if he plead true to the parole violation.  Dow plead true at the hearing.  Hebert recommended that Dow receive a five year setback, with a rehearing in two years if Dow was of good

behavior.[1]  Dow's attorney then requested that Dow receive a three-year setback.  The APB imposed a five-year setback and has not, since then, granted any rehearing although Dow has been of good behavior since his parole was revoked.[2]

Dow now brings this petition, raising five claims for relief:[3]

1.  Dow's liberty interest in remaining free on parole was abridged by the Department of Corrections placing him in the custody of a parole office whose officers were biased against him, because one of the officers was a relative of his crime victim;

2.  Dow was denied the effective assistance of counsel at his parole revocation hearing when his attorney recommended the APB impose a three-year setback after advising Dow he could expect only a six month setback upon his true plea to the parole violation;

3.  Dow was denied a determinate sentence, in violation of his due process rights, because his five-year setback served to increase his minimum sentence without the express authorization of the sentencing court;

_____

[1]A "setback" is the period of time a parole revokee must serve at the prison prior to again being considered for parole.

[2]Dow reapplied for parole on November 29, 2007, but was denied.  Instead, the five year setback imposed on July 19, 2005 was reaffirmed.

[3]The claims as identified herein will be considered to be the claims raised in the petition for all purposes.  If Dow objects to the identification of the claims here, he must do so by objecting to this Report and Recommendation or by properly moving to amend his petition.

4.  The five-year setback Dow received for a technical
    violation of his parole was excessive, and contrary to
    the Eighth and Fourteenth Amendment's guarantee against
    cruel and unusual punishment, in that it was improperly
    based on the nature of his underlying crime rather than
    the nature of his parole violation;

5.  Dow's ability to be paroled was improperly obstructed
    by the DOC when it (I) refused to reduce his custody
    status while requiring him to attain a reduced custody
    status to obtain parole, (ii) suggested that, to obtain
    parole, Dow avail himself of programming that did not
    exist, and (iii) continued to obstruct his
rehabilitation after he was granted parole.

<u>Discussion</u>

I.  <u>Claims Based on Right to Parole</u>

It is well-settled that a convicted person has no
constitutional right to be conditionally released before the
expiration of a valid sentence.  <u>See</u> <u>Greenholtz v. Inmates of
Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979).  A valid
conviction, with all its procedural safeguards, extinguishes that
liberty right.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Meachum v. Fano</u>, 427 U.S. 215,
224 (1976).  Further, a convicted person does not have a
constitutional interest in being paroled to any particular
district.  <u>See</u> <u>Bagley v. Harvey</u>, 718 F.2d 921, 924 (9th Cir.
1983); <u>Alonzo v. Rozanski</u>, 635 F. Supp. 496, 498 (N.D. Ill.
1986).  A right to parole under the Due Process Clause exists
only if such right is created by state law.  <u>See</u> <u>Sandin v.</u>

10

Conner, 515 U.S. 472, 483-84 (1995); Hamm v. Latessa, 72 F.3d 947, 954-55 (1st Cir. 1995); Brooker v. Warden, N.H. State Prison, No. 98-466-JD, 1999 WL 813893, at * 2 (D.N.H. June 22, 1999).  Here, Petitioner has no state-created liberty interest in parole.  See Jago v. Van Curen, 454 U.S. 14, 19-21 (1981); Ainsworth v. Risley, 244 F.3d 209, 216-17 (1st Cir. 2001); Knowles v. Warden, N.H. State Prison, 140 N.H. 387, 389, 666 A.2d 972, 974-75 (1995).  "In determining whether state law provides a protectable liberty interest in parole, federal courts are bound by the state's interpretation of applicable state law unless that construction or application violates federal law."  Brooker, 1999 WL 813893, at * 2.

The applicable New Hampshire parole laws are found in N.H. Rev. Stat. Ann. ("RSA") § 651-A.  The statute provides the terms of release for parole:

> A prisoner *may* be released on parole upon the expira-
> tion of the minimum term of his sentence, [as adjusted
> by other statutory provisions], provided that there
> shall appear to the adult parole board, after having
> given the notice required in RSA 651-A:11, to be a
> reasonable probability that he will remain at liberty
> without violating the law and will conduct himself as a
> good citizen.  Any prisoner so released shall be given
> a permit by the board to be at liberty from prison
> during the unexpired portion of the maximum term of his
> sentence.

RSA 651-A:6, I (2007) (emphasis added).  Under the authority

provided by RSA 651-A:4, III, the Parole Board has adopted rules

pertaining to parole policy:

> Parole shall be considered a privilege, something to be
> earned rather than automatically given, and any release
> prior to the maximum term shall be made only upon
> careful and lawful consideration.  An inmate shall not
> be granted parole unless the board finds a reasonable
> probability that the inmate will remain at liberty
> without violating any law and will conduct himself as a
> good citizen, pursuant to criteria in Par 301.02.

N.H. Code Admin. R. Par 301.02 (2007).

The New Hampshire Supreme Court has repeatedly held that the

Parole Board has broad discretion in its parole decisions and

that the Board is not mandated to grant parole to an inmate who

meets certain conditions or criteria.  See Knowles, 140 N.H. at

389, 666 A.2d at 974-75; Cable v. Warden, N.H. State Prison, 140

N.H. 395, 398, 666 A.2d 967, 969 (1995); Baker v. Cunningham, 128

N.H. 374, 381, 513 A.2d 956, 960 (1986).  Simply put, "[t]he

possibility of parole is not a right to liberty conferred by New

Hampshire state law."  Brooker, 1999 WL 813893, at * 4.

Specifically, Dow has alleged that he was denied the right

to be paroled by the respondent: (1) conditioning his release on

compliance with the supervision of a particular parole office;

(2) imposing an excessive setback after a revocation hearing; (3)

denying him parole eligibility before the expiration of his five-year setback; and (4) requiring Dow to attend a halfway house, obtain a reduced custody level, and avail himself of counseling prior to being considered for parole.

Given that petitioner is a convicted prisoner, he has no constitutionally protected or state-created liberty interest in being granted parole.  Petitioner also has no legitimate claim to being paroled to a particular address or district.  Nothing petitioner alleges, even if true, would indicate that the Parole Board abused its broad discretion by committing Dow to the custody of the Concord parole officer, requiring him to live in a particular halfway house or denying Petitioner parole for his failure to provide an approved parole plan or to make his way to a reduced custody level that would render him able to be paroled. Dow's challenges to his setback are actually challenges to the APB's refusal to consider Dow for reparole after his parole was revoked.  Accordingly, those challenges rely for their viability on the existence of a right to be granted parole.  Accordingly, Petitioner's claims challenging the denial of parole, the five year setback, and the imposed conditions for obtaining and

maintaining parole, are not cognizable in a federal habeas action.

All of these complaints are challenges to the failure to grant parole or the failure to grant parole without imposing particular conditions.  As these claims are not cognizable in a federal habeas action, I recommend that claims 1, 3, 4 and 5, as numbered above, be dismissed.[4]

II.   Ineffective Assistance of Counsel

Dow's remaining claim alleges that his confinement pursuant to his parole revocation is unlawful because he received ineffective assistance of counsel at his parole revocation hearing.  In New Hampshire, an inmate facing parole revocation has a right to have counsel represent him at his revocation hearing.  See N.H. Code Admin. R. Ann. Par 501.05(a)(5) (2007).  Dow alleges that his attorney failed to represent his best interests at the hearing, and actually advocated for a position adverse to both his interests and the advice she gave him prior to the hearing.  Dow further alleges that he relied on her advice

_____

[4]To the extent that Dow alleges that individual members of the Concord parole office violated his constitutional rights, his claim arises, if at all, under 42 U.S.C. § 1983, which provides individuals with a cause of action for violations of constitutional rights by individuals acting under the color of state law.

in making the decision to plead true to the violation.  Dow has sufficiently alleged, for purposes of preliminary review, that he was not effectively represented by counsel, and therefore states a cognizable federal habeas claim challenging his confinement pursuant to the revocation of his parole.

III. <u>Custody and Exhaustion</u>

To be eligible for habeas relief, Dow must show that he is both in custody and has exhausted all State court remedies, or that he is excused from exhausting those remedies because of an absence of available or effective State corrective processes. <u>See</u> 28 U.S.C. § 2254(a) & (b); <u>see</u> <u>also</u> <u>Adelson v. DiPaolo</u>, 131 F.3d 259, 261 (1st Cir. 1997) (citing authority to explain the exhaustion principle).  Dow has satisfied the first requirement, as he is currently incarcerated.

A petitioner's remedies in New Hampshire are exhausted when the State's highest court has had an opportunity to rule on the petitioner's claims.  <u>See</u> <u>Lanigan v. Maloney</u>, 853 F.2d 40, 42 (1st Cir. 1988) ("habeas corpus petitioner must have presented the substance of his federal constitutional claim[s] to the state appellate courts so that the state had the first chance to correct the claimed constitutional error"); <u>see</u> <u>also</u> <u>Picard v.</u>

15

Connor, 404 U.S. 270, 275 (1971) (requiring petitioner to have fairly presented the federal nature of his claims to the State courts to give them the first opportunity to remedy the claimed constitutional error).  At present, Dow's petition does not demonstrate that he has satisfied the exhaustion requirement for his ineffective assistance of counsel claim.  Dow has, however, provided notice to this Court that this issue, including the federal nature of the claim, is currently pending before the state Superior Court.

If the matter is not resolved in Dow's favor in the Superior Court, Dow must appeal that Court's decision to the New Hampshire Supreme Court, again raising the federal ineffective assistance of counsel claim he seeks to present in this petition.  Once the New Hampshire Supreme Court has had an opportunity to rule on the issue, and has made its decision, the issue will have been exhausted in the State courts.  At that time, if the matter was not resolved favorably to Dow in the state courts, it will become ripe for review as a federal habeas claim.

IV.  Request for Stay

Dow has requested that this matter be stayed while he exhausts his claims in the state courts.  Because I find that

16

exhaustion has not yet been demonstrated, but is currently being
pursued, I will grant the request for a stay in an Order issued
simultaneously with this Report and Recommendation.  The Order
also will provide Dow with sufficient direction as to how to
proceed during the pendency of the stay in this matter.

Conclusion

For the foregoing reasons, I recommend that all of the
claims, except the claim alleging ineffective assistance of
counsel, be dismissed as not cognizable in a federal habeas
action.  Any objections to this Report and Recommendation must be
filed within ten (10) days of receipt of this notice.  Failure to
file objections within the specified time waives the right to
appeal the district court's order.  See Unauthorized Practice of
Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);
United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date:       February 12, 2008

cc:         Frank E. Dow, pro se


17